509 P.2d 1083

Gladys M. TAYLOR, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

J. J. Newberry Company, Respondent Employer,

Lumbermen's Mutual Casualty Company, Respondent Carrier.

No. 1 CA–IC 773.

Court of Appeals of Arizona, Division 1, Department B.

May 15, 1973.

Noel J. R. Levy, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by William R. Jones, Jr. and M. Byron Lewis, Phoenix, for respondents employer and carrier.

JACOBSON, Chief Judge.

This appeal, in an Industrial Commission award setting, questions the finality of a "Notice of Claim Status" issued by the respondent insurance carrier and the sufficiency of the evidence to sustain the Commission's denial of the injured claimant's petition to reopen her claim.

On September 17, 1969, the petitioner, Gladys M. Taylor, suffered an injury to her right hand arising out of and in the course of her employment. Following having her hand placed in a cast for three weeks with no improvement, she was seen by Dr. John Ricker, an orthopedic hand specialist.

Dr. Ricker continued to treat the petitioner until June 1, 1970, when he concluded that her condition was stationary and discharged her with a 20% permanent functional loss of her right hand. Dr. Ricker testified that he did not inform the petitioner of his conclusion concerning either the permanent nature of her injury or the percentage of loss of function. Dr. Ricker did, however, supply the respondent insurance carrier, Lumbermen's Mutual Casualty Company, with a report of his findings.

After receipt of Dr. Ricker's report, the insurance carrier requested that the petitioner be examined by Dr. Leo L. Tuveson. Following Dr. Tuveson's examination, the insurance company on July 9, 1970 issued its "Notice of Claim Status" to the petitioner advising her that "claimant [is] discharged with no residual permanent disability" and terminated petitioner's medical benefits as of June 22, 1970. This notice advised petitioner that in the event she was aggrieved by the action of the carrier she could apply for a hearing with the Commission within 60 days.

The insurance carrier also notified the Industrial Commission upon an appropriate form of its action based upon the report of Dr. Tuveson, which report, the form indicated, was attached. Dr. Tuveson's report cannot be found in the Commission's file.

The petitioner did not protest the notice of claim status issued by the carrier within the requisite 60 days.

In April 1971, petitioner again contacted Dr. Ricker complaining of continued problems with her right hand. At this time, the petitioner first learned of Dr. Ricker's opinion that her injuries were permanent in nature. Based upon this knowledge, she filed a petition to reopen her industrial claim. This was denied by the carrier and a timely request for a hearing was made. Evidence at the hearing revealed that petitioner did not protest the carrier's July 9, 1970 notice of claim status based upon her belief that her injuries were temporary in nature and would disappear with the passage of time. Petitioner also testified that she had no knowledge of Dr. Ricker's opinion that her injuries were permanent in nature. Dr. Ricker, based upon an ex-

amination performed on April 23, 1971, testified, pertinent to whether petitioner suffers from a new, additional or previously undiscovered disability as follows:

"A. I thought her condition was essentially the same as it had been the previous June when I last seen [sic] her except that now she had more evidence of what is what we call a carpal tunnel syndrome or compression of medial nerve at the wrist, which at a previous examination, that is, before the June examination of 1970 I had suspected that she might have this condition and had gotten an electromyogram, which tests the conduction of nerves, and this was not definitely one way or the other, but she did improve. So, at the time I recommended that she be discharged in June of '70, the symptoms and findings of this carpal tunnel syndrome were very minor.

"Q. And then in April of 1971 do I understand correctly that this became more increased, this particular condition, carpal tunnel syndrome?

"A. Well, it was more a suggestion that she had it. It's not a condition that you can diagnose easily at all times. There are numerous symptoms, and also physical findings, and when they are all there, it's an easy condition to diagnose. When they are only symptoms and few physical findings, it's very difficult to diagnose, and I thought that there was a possibility that she had this, and felt, in my notes here, I suggested that she have a neurosurgical examination to either confirm or rule out that possibility."

Addressing himself to the question of whether in fact petitioner presently suffers from a carpal tunnel syndrome, Dr. Ricker testified:

"Q. Do you have an opinion of whether, based upon your history, the symptoms given to you by Mrs. Taylor and the examination of April 1970 and of November 8th, 1971, do you have an opinion, based upon a reasonable medical certainty whether Mrs. Taylor has a carpal tunnel syndrome?

"A. Well, I can't answer that question yes or no because I think I have explained it before. It's—there is a possibility that she has it. There are also other conditions in the upper extremity that can cause similar symptoms, and I would need more, like the electromyogram, I would like to have it before I could make a definite diagnosis."

Dr. Ricker was of the opinion that the petitioner still suffers from a 20% permanent functional loss of use of the right hand, the same diagnosis he made in June 1970, when he discharged the petitioner.

Based upon Dr. Ricker's testimony that petitioner's condition was substantially unchanged from the time of his discharge in June 1970, the hearing officer found that she had failed to sustain her burden of proving that she presently suffered from new, additional or previously undiscovered condition or disability. Further, the hearing officer found that petitioner's failure to timely protest the notice of claim status of July 1970, precluded the Commission from inquiring as to the propriety of that award.

The Commission, on timely review, affirmed the hearing officer's award denying reopening and petitioner has sought relief in this court by writ of certiorari.

Petitioner has raised two issues on appeal:

(1) Did she sustain her burden of proving that she presently suffered from a new, additional or previously undiscovered disability?

(2) Should she be relieved from her failure to timely seek relief from the July 9, 1970 notice of claim status?

■ Petitioner's first contention is based upon the present existence of a "carpal tunnel syndrome" which was not present at the time she was first discharged from treatment in June 1970, by Dr. Ricker. A fair reading of Dr. Ricker's testimony, and especially that quoted in this opinion, leads us to the conclusion that Dr. Ricker had merely a suspicion of the existence of such a syndrome and that

he was unable to state to the degree of medical certainty necessary to support a finding that, in fact, such a syndrome existed. Under such circumstances the Commission was not and probably could not, be required to find the existence of such a condition. Moffett v. Industrial Commission, 18 Ariz.App. 397, 502 P.2d 546 (1972). In all other respects, Dr. Ricker was of the opinion that the petitioner's present condition was basically unchanged from her condition at the time the notice of claim status was issued. We hold that the medical evidence does not support petitioner's reopening petition.

■ Petitioner argues, however, that given the finality of the notice of claim status finding no permanent disability and the presence of medical testimony that she now suffers from a permanent disability, this shows a changed condition. This argument is made in reliance on the statement in Verdugo v. Industrial Commission, 8 Ariz.App. 492, 447 P.2d 584 (1968), that:

"This award [of no disability] is binding upon the petitioner as well as the Commission and we must assume that either the petitioner had no disability at that time or that said disability was undetected." 8 Ariz.App. at 493, 447 P.2d at 585.

The interpretation placed by petitioner on *Verdugo* would result in allowing, on a petition to reopen, the relitigation of the basis for the original award by merely showing that there is medical opinion contrary to the conclusion reached in the original award, and that medical opinion is still held. This would completely destroy the doctrine of *res judicata* as applied to Industrial Commission awards. Such a result is not required by *Verdugo*, and is contrary to settled law. Talley v. Industrial Commission, 105 Ariz. 162, 461 P.2d 83 (1969); London v. Industrial Commission, 71 Ariz. 111, 223 P.2d 929 (1950); *see* Whitley v. Industrial Commission, 19 Ariz.App. 519, 508 P.2d 778 (filed April 17, 1973).

■ This brings us to the issue of whether in fact the notice of claim status issued on July 9, 1970 is entitled to finality and thus *res judicata* as to the finding that petitioner's condition is temporary in nature. Petitioner first argues that the failure of Dr. Tuveson's report, supposedly attached to the notice of claim status filed with the Commission, to appear in the Commission's file destroys the *res judicata* effect of that notice. Petitioner's second argument is that under the rationale of Parsons v. Bekins Freight, 108 Ariz. 130, 493 P.2d 913 (1972), the petitioner is entitled to be relieved from the *res judicata* effect of the notice of claim status. Since we are of the opinion that petitioner has shown a *prima facie* case for coming within the precepts of *Parsons* and for this reason the award must be set aside, we do not reach the issue of the effect of the "lost" Dr. Tuveson's report.

Prior to *Parsons*, the law appeared to be fairly well settled that failure to timely protest an award of the Industrial Commission deprived the Commission of jurisdiction to further consider the matter. Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969); Davila v. Industrial Commission, 98 Ariz. 258, 403 P.2d 812 (1965). That this same finality accorded awards of the Industrial Commission was also accorded to notices of claim status issued by the carrier also appears to be fairly well settled. Saline v. Industrial Commission, 16 Ariz.App. 204, 492 P.2d 453 (1972); Pinkerton v. Industrial Commission, 15 Ariz.App. 275, 488 P.2d 480 (1971); Best v. Industrial Commission, 14 Ariz.App. 221, 482 P.2d 470 (1971). The two recognized exceptions to this *res judicata* rule are that where the award was either the result of mutual mistake or stenographic error *res judicata* did not apply. Franklin v. Industrial Commission, 9 Ariz. App. 64, 449 P.2d 300 (1969); Martin v. Industrial Commission, 63 Ariz. 273, 161 P.2d 921 (1945); Hamer v. Industrial Commission, 43 Ariz. 349, 31 P.2d 103 (1934).

In the words of *Parsons*, the Supreme Court has not considered "it appropriate to recede from that position." The question to be determined, however, is where the

boundaries of *res judicata* are to be fixed following such receding. In reaching such a determination, it is helpful to analyze the factual setting giving rise to the *Parsons* decision.

In *Parsons*, following the industrial injury, the workman was involved in a non-industrially related automobile accident. After the automobile accident, the insurance carrier issued its notice of claim status terminating industrial benefits on the basis that the workman's present condition was related to the automobile accident and not to his industrial injury. The Supreme Court found that at the time the injured workman received the notice of claim status he was "[i]n the position of not knowing whether he still had symptoms connected with his industrial accident . . .." This lack of knowledge continued until he received a report from his physician which stated that in fact he was so suffering, by which time the 60 days within which to protest the notice of claim status had expired. In holding that the failure to timely protest the notice of claim status did not result in the application of the doctrine of *res judicata*, the court in *Parsons,* stated:

> "When the facts appear to warrant relief, as here, and the delay is neither excessive nor unfair in its consequences to the carrier, the Commission in the interests of justice may waive the untimeliness of the filing." 108 Ariz. at 132, 493 P.2d at 915.

■ This statement of the court, however, must be read in the factual setting which gave rise to it. And when so read, we have no hesitancy in holding that the doctrine of *res judicata* as applied to Industrial Commission matters is alive and well. What *Parsons* has done, in our opinion, is add another exception to the doctrine of *res judicata* as applied to Industrial Commission matters. In our opinion, that exception is that when at the time of the issuance of an award or a notice of claim status, the claimant does not have knowledge of facts or by the exercise of reasonable diligence could not obtain knowledge of facts which would entitle

him to properly protest the award, the Commission may waive failure to protest provided that the delay occasioned thereby is neither excessive nor unfair in its consequences to the carrier.

Applying this analysis to the facts of this case it appears that petitioner at the time that the carrier issued its notice of claim status had no knowledge that medical opinion existed that her injury was in fact permanent as compared to the carrier's determination that her injury was temporary in nature. Based upon her belief that the carrier's determination of temporariness was correct and that her condition would improve, she did not protest that determination. In other words, she had no knowledge, as so found by the hearing officer, at the time the notice of claim status was issued that there existed facts under which she could properly protest that notice. This set of facts would appear to fit *Parsons*, at least initially, like a glove. Unfortunately, at the time the hearing officer entered his decision in this case, *Parsons* had not been rendered and, therefore, he made no determination as to whether petitioner by the exercise of reasonable diligence could have timely ascertained the existence of the contrary medical opinion or whether the delay in seeking relief from that notice of claim status was excessive or unfair to the carrier. These additional findings are required to comply with the complete requirements of the *Parsons* exception.

However, having satisfied the threshold requirements of *Parsons*, we are of the opinion that the award must be set aside for an additional hearing to determine the existence or non-existence of the balance of these requirements.

In the event the Commission determines that petitioner's case satisfies the *Parsons* exception, petitioner should be allowed to present evidence concerning the permanency of her industrial injury.

Award set aside.

EUBANK, P. J., and HAIRE, J., concur.