536 P.2d 705

Viola M. BERNARD, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Diamond's, Respondent Employer,

American Mutual Liability Insurance Company, c/o Crawford and Company, Respondent Carrier.

No. I CA–IC I199.

Court of Appeals of Arizona, Division 1, Department C.

June 17, 1975.

Rehearing Denied Sept. 9, 1975.
Review Denied Oct. 16, 1975.

Burch, Cracchiolo, Levie, Guyer & Weyl by John F. Day, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robbins, Green, O'Grady & Abbuhl, P. A., by Richard W. Abbuhl, Phoenix, for respondent employer and respondent carrier.

## OPINION

NELSON, Presiding Judge.

On November 22, 1970, the petitioner herein, Viola M. Bernard (Bernard), was injured while at work at Diamond's Department Store, respondent employer herein (Diamond's), when a box of linens fell from a shelf, striking her in the chest. Her claim was accepted by Diamond's then insurance carrier, American Mutual Liability Insurance Company, respondent carrier herein (Carrier), and she was provided treatment for such injury up to August 13, 1973, when the Carrier issued a Notice of Claim Status purporting to terminate Bernard's medical benefits because she had been discharged without permanent disability and had not lost time from work in excess of 7 days attributable to the injury.

Bernard did not understand the notice and took no action as a result of receiving it. She believed she was continuing to receive benefits.

Dr. C. E. McCorkle, Jr. had been treating Bernard, at the request of the insur-

ance carrier, since April 22, 1972. On July 27, 1973, Dr. McCorkel was informed by letter that the insurance carrier had decided further treatment was unnecessary based upon a report they had received from two additional physicians they had retained to examine Bernard. Dr. McCorkle responded to the Carrier's letter August 9, 1973, indicating he believed the patient needed further treatment, possibly even surgery, but that if the Carrier wished another doctor to assume responsibility for Bernard, he would abide by their wishes. He received no response to this letter and continued to treat Bernard.

In October 1973, surgery was performed. Only after Bernard began to receive the bills for the surgery did she realize something was wrong. Her employer was likewise unaware of the status of her case with the carrier and had to make inquiry to discover the actual background and facts. The Commission did not receive a copy of the claim status notice until January of 1974. See: A.R.S. § 23–1061(F).

On December 3, 1973, a petition to reopen was filed by Bernard. This petition was denied on January 22, 1974. Bernard sought a hearing on this denial and also, on March 1, 1974, sought a hearing as to the validity of the August 13, 1973 Notice of Claim Status. A hearing was held regarding the jurisdictional aspects of her protest of the August 13, 1973 Notice of Claim Status. As a result of a hearing held on June 5, 1974, the hearing officer found that the Notice of Claim Status of August 13, 1973 had become final and that her request for a hearing to protest the determination therein was untimely filed and could not be considered on the merits. The hearing officer expressly declined to rule on the petition to reopen, no evidence thereon having been adduced, and that matter was still pending at the time this record was completed.

After a timely application for review, the hearing officer issued his decision affirming the prior findings and award. The matter is now before this Court for review. Because of the ambiguity of the Notice of Claim Status itself, especially when coupled with the conduct of the Carrier and its representatives regarding Dr. McCorkle's further and continued involvement in the case, we must set aside the award.

This case is another—and we hope the last—of a series of cases which have come before this Court in recent years regarding interpretation of Notices of Claim Status, particularly, if not exclusively, when those notices are adverse to the claimant. We believe the case to be controlled by Best v. The Industrial Commission of Arizona, 14 Ariz.App. 221, 482 P.2d 470 (1971). The Court in *Best* held that a notice which combined a denial of a petition to reopen with an intent to schedule additional medical examinations was "not sufficient to require the petitioner to request a hearing within sixty days of the date thereof or be forever barred from urging his rights under his petition to reopen." 14 Ariz.App. at 224, 482 P.2d at 473.

In the case here now, the Notice of Claim Status indicated both that the claim was accepted for benefits as an accidental injury claim and that medical benefits were terminated and the claimant was discharged with no permanent disability and no time lost from work in excess of 7 days. As in *Best,* the notice was a series of preprinted statements, preceded by boxes where check marks could be inserted. The "accepted for benefits" block was #1 and the "medical benefits terminated" block was #9. All of the blocks were on a single page, which also contained, at the bottom, the following admonition regarding what to do if aggrieved by the notice:

### "NOTICE TO CLAIMANT"

"If you are aggrieved by this notice, you may apply for a hearing by filing a written application at any office of The Industrial Commission of Arizona within sixty (60) days after the date of mailing of this notice."

Bernard testified she did not know what the word "terminated" meant at the time she got the notice (she did testify that she had become painfully aware of the meaning of the word by the time of the hearing —no one asked her if she knew what the word "aggrieved" meant). She continued to receive treatment from the doctor provided by the Carrier and had no reason to suspect anything was wrong until after she returned to work and began to receive the bills for her surgery.

Perhaps the best evidence that the Notice of Claim Status must be held ambiguous in this instance is found in a portion of the transcript where counsel for Bernard was examining Janet Ford Brown, a workmen's compensation claims supervisor with the carrier's adjustment agency, Crawford and Company.

"Q [By Mr. Day] You have testified it is common practice to mark the blocks that you accept the benefits and you deny the benefits all on the same form.

"A No, you don't accept and deny. You can accept, and you can terminate.

"Q You can accept benefits and terminate?

"A You couldn't accept and deny at the same time. That doesn't make sense.

"Q That certainly doesn't, and I quite agree with you. Is this the form to which you are referring now, the Notice of Claim Status form?

"A Yes.

"Q Would you please read the top line?

"A Yes, I will. That says, 'Claim is accepted for benefits as accidental injury claim.'

"Q Thank you. Now would you read the other line.

"A Yes, that is number nine. It says, 'Medical benefits terminated on 8/13/73.'

"Q Was Mrs. Bernard receiving any other benefits other than medical?

"A No, she was not. This was a no-time-off.

"Q Therefore, you would still suggest then you can say in one breath accepted for benefits and then say denied?

"A I am not saying denied.

"THE HEARING OFFICER: Counsel, I can't permit you to do that. The notice speaks for itself, and there is no implication in this case that the Applicant's claim had been denied. It is clearly accepted.

"MR. DAY: We have had testimony that the only benefits that were being received were the medical benefits.

"THE HEARING OFFICER: That is right, Counsel.

"MR. DAY: However, we have on this Notice of Claim Status form saying that the benefits are accepted, that the individual has been accepted for benefits, and in the same breath, another breath, saying the only benefits she is being provided are being denied, terminated.

"THE HEARING OFFICER: They are not being denied, Counsel. I can't permit you to do that. The only benefits that she was receiving are being terminated. Now, there is a distinct difference between terminated and denied. The dictionary is quite clear on that, and besides that is legal argument that you can get into."

While the learned hearing officer may have been substantially correct as to himself, counsel, and a claims supervisor with four years' experience in workmen's compensation matters, to impose the responsibility for discerning these fine distinctions on the average person covered by Workmen's Compensation Insurance in this state, at the peril of losing all their rights should they fail to perceive these semantic nuances, is unreasonable. No one doubts the truthfulness of Bernard's testimony

that she did not understand the word "terminate" when she received the Notice of Claim Status. In a work force that contains education levels of achievement from illiteracy to professional and doctoral degrees, there are probably thousands of people that would have trouble with the word "terminate", to say nothing of other critical words in the form, such as "attributable" and "aggrieved". Under these circumstances, as the Court opined in *Best,* supra, "the petitioner should not be deprived of [her] right to a hearing". 14 Ariz.App. at 224, 482 P.2d at 473.

In the last few years, courts and legislative bodies have gone to great lengths to insure that the average citizen is carefully and fully informed of his options, both in the marketplace and in the courthouse, prior to making critical decisions in his life. E. g., 15 U.S.C.A. § 1631, 82 Stats. 152 (general requirement of disclosure of finance charges in federal consumer protection law); A.R.S. § 44–5002 (cancellation period for home solicitation sales); Ariz.R.Crim.P., Rule 6.1 (waiver of right to counsel), Rule 8.2 (time limits for speedy trial), Rule 9.1 (defendant's waiver of right to be present at any proceeding against him), and Rule 17.2 (duty of court to advise defendant of his rights and of the consequences of pleading guilty or no contest), 17 A.R.S. The thrust of these statutes and rules is not to necessarily discourage the making of these choices, but to insure that they are made with a full understanding of the facts and their impact.

In *Best,* supra, the form in question apparently had only eight blocks for possible check marks. The form in this case had 11 blocks with 3 of the blocks having separate subdivisions. A later form in this file (used to deny the petition to reopen and also signed by Janet Brown) had the same number of blocks (11), but had them arranged somewhat differently and had a larger and more expanded Notice to Claimant portion, all in red, with portions underlined.

While there is certainly a place for the use of forms in the processing of the tens of thousands of claims for workmen's compensation filed each year in this state, they must be clearly understood by the average person who receives those forms and who may either be required to take some action or may deeply desire to take some action, based upon the information contained therein. This should be especially true in cases where the form indicates an action taken adverse to the person receiving the form and which will become final in a specified time if some affirmative action is not taken. There will, of course, be situations where, because of the nature and condition of the claimant, any form notification would be inadequate and other individualized notice efforts should be, and undoubtedly are now being undertaken.

■ In light of this Court's decision in Best v. The Industrial Commission of Arizona, supra, the facts of this case, several recent cases of the Supreme Court regarding the relaxation of theretofore rigid jurisdictional time limits, Parsons v. Bekins Freight, 108 Ariz. 130, 493 P.2d 913 (1972); Janis v. The Industrial Commission of Arizona, 111 Ariz. 362, 529 P.2d 1179 (1974); Chavez v. The Industrial Commission of Arizona, 111 Ariz. 364, 529 P.2d 1181 (1974); and in light of the remedial nature of the Workmen's Compensation Law generally, Royall v. Industrial Commission of Arizona, 106 Ariz. 346, 476 P.2d 156 (1970); Camis v. The Industrial Commission of Arizona, 4 Ariz.App. 312, 420 P.2d 35 (1966), when any reasonable doubt exists as to the meaning to be attached to a given form attempting to alter, terminate, or otherwise affect the rights of a claimant for workmen's compensation in this state, the benefit of that doubt will be given the claimant and the ambiguities resolved against the carriers, employers, State Compensation Fund and The Industrial Commission of Arizona.

The award is set aside.

**140**

STEVENS, J., concurs.

WREN, Judge (specially concurring):

I agree that the award should be set aside because the Notice of Claim Status was contradictory and therefore ambiguous.

I do not however, subscribe to the proposition that this Court should take issue with the terminology used in the forms in general, and attempt by criticism to rewrite them. To me, there is nothing misleading or complex in the use of such words as "terminated" or "aggrieved". Such terms are not normally associated with a high educational level or even professional use, and if not understood by an applicant, may easily be made the subject of inquiry to a dictionary or advisor. It would be manifestly impossible to use the English language in such a way that it would be understood by all applicants.

Moreover, a claimant seeking to reopen is bound not only by those facts of which he has knowledge, but also those which he may ascertain by the exercise of reasonable diligence. *Cf.* Taylor v. Industrial Commission, 20 Ariz.App. 46, 509 P.2d 1083 (1973).