656 P.2d 1230

Marguerite Van NELSON, widow,
Charles E. Nelson, deceased,
Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Adams Insulation, Inc., Respondent
Employer,

State Compensation Fund, Respondent
Carrier.

Marguerite Van NELSON, widow, Charles
E. Nelson, deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Owens-Corning Fiberglass Corp.,
Respondent Employer,

State Compensation Fund, Respondent
Carrier.

Marguerite Van NELSON, widow,
Charles E. Nelson, deceased,
Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Adams Insulation, Inc., Respondent
Employer,

Insurance From CNA, Respondent
Carrier.

Marguerite Van NELSON, widow,
Charles E. Nelson, deceased,
Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Fuller Austin Insulation Company,
Respondent Employer,

State Compensation Fund, Respondent
Carrier.

Marguerite Van NELSON, widow,
Charles E. Nelson, deceased,
Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Arthur G. McKee & Company,
Respondent Employer,

Crawford and Company, Respondent
Carrier.

No. 15943–PR.

Supreme Court of Arizona,
En Banc.

Nov. 19, 1982.

Rehearing Denied Jan. 5, 1983.

Davis & Eppstein by Philip Hall, Tucson, for petitioner.

Everett, Bury & Moeller by J. Michael Moeller, Tucson, for respondents Arthur G. McKee & Co. and Crawford and Co.

Chandler, Tullar, Udall & Redhair by William J. Augustine, Tucson, for respondents Adams Insulation, Inc. and Insurance From CNA.

Robert K. Park, Chief Counsel State Compensation Fund, Phoenix by George B. Morse, Tucson, for respondents Adams Insulation, Inc., Owens-Corning Fiberglass Corp., Fuller Austin Insulation Co. and State Compensation Fund.

Calvin Harris, Chief Counsel, Phoenix, for respondent Indus. Com'n of Arizona.

FELDMAN, Justice.

Petitioner brought a claim for benefits under the occupational disease provisions of the Workmen's Compensation Act. The administrative law judge dismissed the claim on the ground that he had no jurisdiction because the claim had not been timely filed. This ruling was affirmed by an award of the Industrial Commission. The award was affirmed by the court of appeals in a memorandum decision (1 CA–IC 2525, filed February 2, 1982), and petitioner then sought review in this court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Ariz.R.Civ.App.P. 23, 17A A.R.S. Having granted review, we now vacate the decision of the court of appeals.

There are two basic issues on appeal. First, did the administrative law judge abuse his discretion in finding that the claim was filed more than one year after the petitioner should have discovered the causal connection between the injury and industrial exposure? Second, is there a meritorious reason excusing the late filing?

The petitioner is the widow of Charles E. Nelson (Nelson). Nelson had been an insulation worker who had handled asbestos for many years. The cause of death was mesothelioma, a tumor of the mesothelial tissue which forms the lining of both the pleural and abdominal cavities. For the purpose of these proceedings, it is uncontroverted that Nelson's death was related to his trade as an insulation worker.

Nelson first became ill in October of 1976. Mrs. Nelson was then 67 years of age. The couple had been married since 1941. They were unusually close and dependent on each other; they did not socialize with others, and spent their free time together. Mrs. Nelson was told that her husband had terminal cancer, diagnosed as mesothelioma, late in 1976. After she learned this, she devoted her entire energies to her husband's care. Nelson was hospitalized in November and December of 1976. He spent the last few weeks prior to his death on the couch in the living room of the family home. Mrs. Nelson slept on the floor next to the couch and provided him with all of his care on a round-the-clock basis. Nelson died on January 11, 1977.

As a result of their extremely close relationship and her dependence, Mrs. Nelson experienced serious problems after her husband's death. She described her reaction as a feeling of her "world ending." The psychiatrists who testified at the hearing before the administrative law judge diagnosed Mrs. Nelson's problems as extreme depression and profound grief reaction marked by denial and withdrawal from reality. They concluded that her condition was pathological, unconscious and prolonged.

Mrs. Nelson remained in this condition until April of 1979, when she was persuaded to visit Dr. Gelardin, a psychiatrist. As a result of psychiatric intervention, petitioner experienced a release of her pressures and began to think more rationally. She put her husband's possessions away and began to take care of herself. About a month later, she made an appointment to visit the family doctor for treatment of some growths on her skin. This was the same doctor who had treated Nelson during his last illness. Mrs. Nelson testified that it was during this visit, in May 1979, that she first learned of the causal connection between her husband's employment and the disease which had taken his life.

The claim for benefits was filed five months later, on October 9, 1979. This was almost two years and nine months from the date of Nelson's death.

The claim statute in effect at the time read as follows: "[N]o claim for compensation shall be valid or enforceable unless the claim is filed ... within one year after the injury occurred or the right thereto accrued." A.R.S. § 23–1061(A) (Supp. 1957–1977) (amended 1980). Nelson's injury was not of the sudden, traumatic type where the "date of injury" or the accrual of the "right" is readily apparent. In the case of a gradual injury or occupational disease, the date of injury is considered to be the date the claimant discovered or "in the exercise of reasonable diligence" should have discovered the relationship between the di-

agnosed injury or disease and the industrial exposure. *Nelson v. Industrial Commission,* 120 Ariz. 278, 281–82, 585 P.2d 887, 890–91 (App.1978); *Mead v. American Smelting & Refining Co.,* 1 Ariz.App. 73, 76, 399 P.2d 694, 697 (1965). In order to trigger the statute, the facts must show more than a mere knowledge of illness or disability. The facts must establish that the claimant knew or should have known that the illness or disability was causally connected to the industrial exposure. *Keeler v. Industrial Commission,* 122 Ariz. 16, 17, 592 P.2d 1282, 1283 (App.1979). This, of course, is ordinarily a question of fact to be resolved by the administrative law judge. *Mead,* 1 Ariz. App. at 77, 399 P.2d at 698.

Petitioner urges that the administrative law judge erred in holding that the claim was untimely filed because there was no evidence from which a reasonable person might conclude that petitioner should have known of the causal relationship in January 1977.

A summary of the evidence on this issue is as follows: Petitioner testified that she had not been told of the causal relationship and did not know of it until she visited the family doctor in May of 1979. Although the family doctor testified that he had "probably" explained the causal relationship to Mrs. Nelson when her husband's illness was first diagnosed in late 1976, he also testified that she probably hadn't understood it at the time because of her mental state. Moreover, he testified that she seemed very surprised when he explained it to her again in May of 1979. One of the psychiatrists stated that following the diagnosis of Nelson's illness and his subsequent death, the petitioner suffered from a partial impairment of both her reasoning and her ability to hear and process details about the circumstances of her husband's death. According to the psychiatrist, the impairment of her reasoning "was due to her using unconscious mental mechanisms of denial and withdrawal, and of not allowing herself to know what was going on."

This abnormal grief reaction was also corroborated by the testimony of petitioner's neighbors. They stated that after Nelson's death, Mrs. Nelson became a virtual recluse, saw few people, had difficulty sleeping, lost 40 pounds, and frequently heard her husband talking to her. During the two years following his death, petitioner was unable to "do anything." The neighbors called on her every day to check on her and help her with housework, shopping and meals.

Respondents argue, on the other hand, that the record establishes that the petitioner had been aware of the disease known as asbestosis, knew that it affected workers' lungs and knew that it sometimes caused cancer.[1] Petitioner replies that while she was aware of the relationship between asbestos, asbestosis and lung problems, Nelson had died of abdominal mesothelioma with symptoms related to his abdomen rather than his lungs.

Finally respondents point to several facts indicating that petitioner was not mentally incapacitated during the period following her husband's death. They note that shortly after Nelson's death she learned to drive, she had a lawyer file probate proceedings, she made a claim through the union for insurance benefits, and that the claim form contained information regarding the nature of her husband's disease. The evidence also indicates, however, that the petitioner was taken to the probate lawyer by her son, that the insurance claim filed through the union was for life insurance which was payable regardless of any connection between the cause of death and her husband's employment, and that the form containing information regarding the cause of death was probably filled out for the petitioner and contained no information with regard to causal connection.

On this record, the administrative law judge resolved the conflicts by finding that petitioner "knew or should have known with the exercise of reasonable diligence" of the causal relationship in January of 1977. On review, the judge affirmed his

1. We note as a medical fact that asbestosis and cancer are different diseases.

previous findings but made a supplemental finding regarding the petitioner's veracity, stating that she "is credible" and that she "can be believed," but was "mistaken" when she testified that the causal relationship had not been explained to her.

Taking these findings together, we must conclude that the administrative law judge resolved the inconsistencies in the record by deciding that although the petitioner did not "know" (had no actual comprehension of the causal connection), information was available to her which a reasonable person was capable of comprehending, and thus she "should have known." No other analysis seems possible in light of the record. The judge found that the petitioner, who testified to not having actual knowledge, was "credible" but "mistaken." Moreover, there was no affirmative evidence in the record of actual knowledge. The judge must have found, on an objective standard, that a person in this situation, exercising reasonable diligence, should have known of the causal relationship in January 1977.

We must decide whether this finding was an abuse of discretion. What constitutes reasonable diligence is peculiarly a question of fact. We are not the triers of fact and the Commission's findings will not be disturbed unless its conclusion "cannot reasonably be supported on any reasonable theory of the evidence." *Perry v. Industrial Commission,* 112 Ariz. 397, 398–99, 542 P.2d 1096, 1097–98 (1975). On this record, we defer to the finding of the administrative law judge and hold, therefore, that he did not abuse his discretion in finding that Mrs. Nelson should have known of the causal connection in January 1977, and that the one-year filing requirement began to run at that time. The time limit thus expired in January 1978, making the October 1979 claim untimely.

After finding that the claim was untimely filed, the administrative law judge addressed the issue of whether a meritorious reason existed which would excuse the late filing. Apparently the judge believed, based on the court of appeals decision in *Keeler v. Industrial Commission,* 122 Ariz. 16, 592 P.2d 1282 (App.1979), that it was within his discretion to excuse the late filing. In order to determine whether, in this situation, the Commission has the discretion to waive the late filing, we must analyze the approach our courts have taken in the past to the issue of untimely filings.

The discretion of the Commission to waive a late filing was examined in *Parsons v. Bekins Freight,* 108 Ariz. 130, 493 P.2d 913 (1972). In *Parsons,* the worker's lack of knowledge of his physical condition caused him to delay the filing of his request for a hearing beyond the time fixed by statute. Rejecting earlier decisions holding that a failure to timely file after determination of an award deprives the Commission of jurisdiction to consider the matter, we held that "[w]hen the facts appear to warrant relief, as here, and the delay is neither excessive nor unfair in its consequences to the carrier, the Commission in the interests of justice may waive the untimeliness of the filing." *Id.* at 132, 493 P.2d at 915.

The *Parsons* test was initially given a narrow interpretation by our courts. *See Taylor v. Industrial Commission,* 20 Ariz. App. 46, 50, 509 P.2d 1083, 1087 (1973) (*Parsons* test applicable only where the claimant lacked knowledge and could not by the exercise of reasonable diligence have obtained knowledge of the facts necessary to timely file); *Garcia v. Industrial Commission,* 20 Ariz.App. 145, 510 P.2d 1050 (1973); *but see In re Trull,* 21 Ariz.App. 511, 520 P.2d 1188 (1974). Any doubt as to the broad scope of the Commission's discretion in applying the *Parsons* test, however, was resolved by our decisions in *Janis v. Industrial Commission,* 111 Ariz. 362, 529 P.2d 1179 (1974), and *Chavez v. Industrial Commission,* 111 Ariz. 364, 529 P.2d 1181 (1974).

In *Janis,* the claimant failed to file a timely petition for review and the Commission dismissed the petition for lack of jurisdiction without considering whether Janis' case warranted relief. This court rejected the argument that the holding in *Parsons* was limited to its facts. Instead, we held that the test is "applicable to all situations where a claimant protests, seeks a review,

rehearing or reconsideration of any order or award." 111 Ariz. at 363, 529 P.2d at 1180; see Gurovich v. Industrial Commission, 23 Ariz.App. 486, 487, 534 P.2d 294, 295 (1975).

In Chavez, the claimant, a worker with only a sixth grade education, failed to timely file a request for hearing because he had not understood the notice of claim status mailed to him by the Commission. This court applied the Parsons test and relieved the claimant from the untimely filing. 111 Ariz. at 365–66, 529 P.2d at 1182–83.

Parsons and its progeny involved claimants who filed their initial claims within the statutory period but failed to file their requests for hearing or petitions for review on time. The case at bench is different. It involves a claimant who failed to file her initial claim within the time required by A.R.S. § 23–1061(A). The discretion of the Commission to excuse an untimely filing was extended to the filing of a claim in Van Horn v. Industrial Commission, 111 Ariz. 86, 523 P.2d 783 (1974) (Van Horn I), modified on rehearing, 111 Ariz. 237, 527 P.2d 282 (1974) (Van Horn II). Timothy Van Horn was injured and failed to file a claim for compensation under A.R.S. § 23–1061 within the one-year requirement. Van Horn did not file because his employer had made repeated promises that he would "take care of everything." The Commission dismissed the late claim for lack of jurisdiction, citing Collins v. Industrial Commission, 102 Ariz. 509, 433 P.2d 801 (1967). This court overruled Collins, rejecting the argument that the filing of a claim under § 23–1061 was jurisdictional. We held that the Commission had the jurisdiction and the discretion to waive the late filing of the worker's claim. Van Horn II, 111 Ariz. at 239–40, 527 P.2d at 284–85.

This decision was based on several grounds. In Van Horn I, we found that the Commission had the inherent power to relieve a worker of the failure to file a timely claim. 111 Ariz. at 89, 523 P.2d at 786. The basis of this power, transcending legislative restriction, was found in the Arizona Constitution, which requires the enactment of a workmen's compensation act "in order to assure and make certain a just and humane compensation law ... for the relief and protection of such workmen, their widows, children or dependents ...." Arizona Constitution, art. 18, § 8, 1 A.R.S. Under the facts, we held that both the employer and the Commission were estopped to claim the untimeliness of the filing as a bar. Van Horn I, 111 Ariz. at 90, 523 P.2d at 787.

On rehearing, the opinion was modified. In Van Horn II, we held that the 1973 amendments to A.R.S. § 23–1061 had negated the doctrine that the filing requirement was jurisdictional.[2] We stated:

> [A]s a result of the amendment to the statute the one year filing requirement: " * * * is no longer jurisdictional as respects the power of the Commission, but is instead an affirmative defense and the doctrine of equitable estoppel may be applied to prevent an employer from raising the bar of the one-year limitation where he had, by his own conduct, caused the employee to forebear filing a claim; * * *."

We note that A.R.S. § 23–1061 has again been amended, effective January 1, 1981. The new statute may cure problems such as the one presented by this case. Under the general provisions, the statute of limitations commences only when the workman knows or should know that "he has sustained a compensable injury." (Emphasis supplied.) The amended statute also expressly deprives the Commission, and the courts, of jurisdiction to entertain late filings except on certain enumerated grounds, which include incapacity as well as legal incompetence. This opinion reaches neither the interpretation of the amended statute nor its validity under the Van Horn doctrine.

2. It has been argued that the court need not have concerned itself with the legislative intent in enacting the amendments to A.R.S. § 23–1061 because "sound policy required repudiation of the [judicially created] theory that this statute of limitations was 'jurisdictional.' Not only had this incongruous doctrine become outmoded, it had produced results inconsistent with the policies underlying workmen's compensation." Note, Workman's Compensation—Failure to Timely File Workmen's Compensation Claim Transformed from Jurisdictional Bar to Affirmative Defense, 1975 Ariz.St. L.J. 447, 453 (footnotes omitted); see 3 A. Larson, Workmen's Compensation Law § 78.70 (1973).

We believe that the statute as amended complies with the constitutional mandate to the legislature to provide a "just and humane compensation law," Art. 18, § 8 Arizona Constitution, 1 A.R.S., and that a claimant who has been misled by his employer may be relieved of his failure to file a notice within one year of the injury. 111 Ariz. at 239, 527 P.2d at 284.

We found further that while the employer should be estopped by his actions to claim the untimeliness of the filing as a bar, the Commission could not be so estopped. *Id.* Thus, the Commission had the jurisdiction and discretion to decide whether or not to excuse the late filing. *Id.* at 239–40, 527 P.2d at 284–85.

From the *Van Horn* opinions, it is clear that the one-year filing requirement of A.R.S. § 23–1061(A) is not jurisdictional and the Commission has discretion to waive the late filing of a claim. In *Keeler v. Industrial Commission, supra,* the court of appeals held that this discretion is not limited to the estoppel situation presented in *Van Horn.* We agree. The Commission's discretion may be exercised to relieve a worker from an untimely claim "when the ends of justice dictate . . . ." *Van Horn I,* 111 Ariz. at 89, 523 P.2d at 786.

This reading of the *Van Horn* decisions and our broad interpretation of the Commission's discretion are consistent with the purpose behind Arizona's compensation law and the rules which have been developed to effectuate that purpose. In *Cook v. Industrial Commission,* 133 Ariz. 310, 651 P.2d 365 (1982), we explained:

[T]he purpose of workmen's compensation is remedial. Provisions should be construed liberally so as to effectuate the purposes of the Act.

" * * * proceedings before [the Industrial Commission] are not adversary proceedings and * * * it is as much the duty of the Commission to encourage and evaluate proper claims fairly as it is to expose and reject improper claims. The intention of the Workmen's Compensation Act was to provide benefits for workmen injured in the course and

scope of their employment, and to do so by a relatively informal administrative procedure which would be less cumbersome and time consuming than formal court action. . . ." *Lugar v. Industrial Commission,* 9 Ariz.App. 44, 49, 449 P.2d 61, 66 (1966). See *Allen v. Industrial Commission,* 87 Ariz. 56, 347 P.2d 710 (1959).

Also, whenever possible, cases should be tried on the merits and not dispensed with on procedural motions. *In re Trull,* 21 Ariz.App. 511, 520 P.2d 1188 (1974). In accordance with the policy of applying the Workmen's Compensation Act to effectuate its purpose, we have held that time limits imposed by the Act may be waived.

Id. at 311, 651 P.2d at 366.

We hold, therefore, that the Commission has the discretion to waive the untimeliness of a claim when the ends of justice require. The test to be applied in determining whether to excuse an untimely filing is the three-part test set forth in *Parsons v. Bekins Freight, supra.* Under this test, the judge must determine whether: (1) the claimant appears to have a meritorious excuse for the untimely filing; (2) the facts establish that there has not been excessive delay; and (3) the delay does not prejudice the insurance carrier. *Parsons, supra; Keeler, supra.* If these facts are present, the interests of justice require that the Commission waive the untimeliness of the filing of the claim. We believe that this test will adequately protect the interest of finality and the necessity of operating the workmen's compensation system in a businesslike manner without jeopardizing the remedial purpose of the system.

The administrative law judge in the instant case applied the *Parsons* test and found that the petitioner did not present a meritorious excuse for her late filing. The judge stated that he did not believe Mrs. Nelson could not comprehend the doctor's statements to her that her husband's cancer was related to his employment. We must decide whether this finding was an abuse of

discretion. The Commission's findings will not be disturbed on appeal if the conclusion can be reasonably supported on any reasonable theory of the evidence. *Perry, supra.* The conclusion that petitioner could comprehend the doctor's statements to her about the causal relationship and therefore did not present a meritorious excuse for the late filing cannot be supported on any reasonable theory of the evidence.

The petitioner testified consistently that she did not know of the causal connection until May 1979. She was found credible on this testimony. While she had some knowledge of the disease of asbestosis, she only knew that it affected workers' lungs. Her husband, on the other hand, had died of abdominal cancer. While the family doctor stated that he "probably" explained the relationship to petitioner in late 1976, he could not recall any details of the conversation. Assuming that the petitioner had been told of the causal connection, the family doctor and the two psychiatrists who examined the petitioner all agreed that she suffered from a depressive neurosis caused by an abnormal grief reaction marked by denial and withdrawal; as a result, her ability to comprehend the details about her husband's death was impaired.

A claimant's lack of knowledge concerning his or her physical condition is one of the facts to be considered in determining whether to excuse the late filing. *See Parsons, supra.* In this case, the uncontroverted facts establish that petitioner's failure to comprehend was caused by the abnormal grief reaction. We find, therefore, that the conclusion that petitioner failed to present a meritorious reason for the late filing is unsupported by the record and is an abuse of discretion.

The Commission also found that a more likely reason for the late filing was the petitioner's lack of knowledge about her right to workmen's compensation benefits. There is nothing in the record to support this finding. The family doctor testified that in May of 1979 he not only explained

the causal connection to her but also told her she should see a lawyer because she might have a claim for benefits under workmen's compensation. A similar suggestion was made by a friend at about the same time. It is one thing to infer from this that the subsequent filing of the claim was an act motivated by the desire to obtain workmen's compensation benefits, but it is another thing to infer that the *previous* failure to take action had been attributable to a lack of knowledge of compensability rather than a lack of understanding of causal connection. Reasonable inferences from the evidence will be supported, but speculation based on nothing in the record cannot be indulged. The record does not support a finding that petitioner knew of the causal relationship but failed to file for lack of knowledge of compensability.[3] *Cf. Riley v. Industrial Commission,* 24 Ariz.App. 98, 536 P.2d 219 (1975).

Applying the remaining factors of the *Parsons* test, we find that the delay was not excessive nor was it prejudicial to the insurance carrier. While the delay in filing was long because of her delay in comprehension, it was not excessive once the petitioner became aware of the causal connection. In this regard we have stated, "short delays are the least important aspect of this test. What is important is that the facts appear to warrant relief and that the delay is not unfair in its consequences to the carrier ...." *Chavez,* 111 Ariz. at 365–66, 529 P.2d at 1182–83. There seems to be no prejudice to the carriers in light of the medical documentation in the file regarding the cause of Nelson's death, the nature of his terminal illness and his work record. The complexity of establishing a causal connection between the industrial exposure and the disease would have existed whether the claim was filed in 1978 or 1979, since the work history going back some three decades would always have been in issue.

An application of the *Parsons* test in this situation reveals that the Commission should have waived the untimeliness of the

**3.** We emphasize that the petitioner, who testified that she had no comprehension of the

causal relationship until May 1979, was found to be "credible."

claim. The administrative law judge found that the unpleasant task [4] of denying compensation was made necessary by the language in *Nicholson v. Industrial Commission,* 76 Ariz. 105, 259 P.2d 547 (1953), which frowns upon "generous interpretations" and "freehandedness." The words used by this court in *Nicholson* are applicable to the case at bench but do not support the result reached by the administrative law judge. In *Nicholson* we stated:

> A liberal construction is not synonymous with a generous interpretation. To interpret liberally envisions an approach with an open and broad mind not circumscribed by strictures or predilection, whereas a generous interpretation suggests freehandedness—largess. It is not in the power of this court to "give" but it definitely is its duty to interpret the law to insure that what the law gives is not withheld.

*Id.* at 109, 259 P.2d at 549.

We do not believe that a waiver of the filing requirement under these circumstances is "freehandedness" or "largess." We do believe that the premiums from which the benefits will come were paid for the purpose of compensating precisely this type of loss. While we do not have the power to "give," as Justice LaPrade pointed out in *Nicholson, supra,* "it definitely is [our] duty to interpret the law *to insure that what the law gives is not withheld.*" (Emphasis supplied.)

The memorandum decision of the court of appeals is vacated, the award is set aside, and the cause is remanded for further proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, dissenting:

If the review of an award of the Industrial Commission were a trial de novo, I could join the majority opinion. Since a review of an award of the Commission is not a trial de novo, I dissent because, like the Court of Appeals, I am satisfied that the evidence is conflicting, and there is sufficient evidence to support the findings of the administrative law judge.

---

4. The administrative law judge, citing *Riley v. Industrial Commission, supra,* noted that "no one is completely comfortable with the resolution of a difficult case on the basis of the statute of limitations, particularly when as here there is no substantial question regarding the right to the relief sought but for the statute of limitations."