NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

WESLEY BOWEN, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

HYATT REGENCY SCOTTSDALE, *Respondent Employer,*

GALLAGHER BASSETT*/BROADSPIRE**, *Respondent Carriers.*

No. 1 CA-IC 13-0029
FILED 4-22-2014

---

Special Action - Industrial Commission
ICA Claim Nos. 20092-080221* and 20073-510395**
Carrier Claim Nos. 0112027199WC01* and 90007250405**
The Honorable Allen B. Shayo, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By  Chad T. Snow
 Co-Counsel for Petitioner Employee

Toby Zimbalist, Phoenix
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent ICA*

Klein, Doherty, Lundmark, Barberich & La Mont, P.C., Tucson
By Eric W. Slavin
*Counsel for Respondent Employer/Carrier Gallagher Bassett*

Lester & Norton, P.C., Phoenix
By Christopher S. Norton
*Counsel for Respondent Employer/Carrier Broadspire*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

**W I N T H R O P,** Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") Award and Decision Upon Review for a scheduled permanent impairment. The petitioner employee ("claimant") presents three issues on appeal:

> 1) Whether the September 16, 2008 notice of claim status ("NCS") issued by the 2007 respondent carrier ("Broadspire") was ambiguous and not entitled to finality;

> 2) Assuming *arguendo* the September 16, 2008 NCS closed the claimant's 2007 industrial injury claim with a scheduled permanent impairment, whether the claimant's 2009 industrial injury claim should have been closed with an unscheduled permanent impairment; and

> 3) Whether the administrative law judge ("ALJ") erroneously denied the claimant's petition to reopen his 2007 injury claim.

We find Broadspire's September 16, 2008 NCS ambiguous, and pursuant to *Bernard v. Industrial Commission*, 24 Ariz. App. 136, 536 P.2d 705 (1975), we resolve that ambiguity against Broadspire. For that reason, we also

2

find the claimant's 2009 industrial injury claim should have been closed with an unscheduled permanent impairment and a loss of earning capacity ("LEC") award. Accordingly, we set aside the ALJ's award.

## I. JURISDICTION AND STANDARD OF REVIEW

¶2            This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Rule 10 of the Arizona Rules of Procedure for Special Actions.[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review *de novo* questions of law. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

## II. PROCEDURAL AND FACTUAL HISTORY

¶3            The claimant worked as an assistant director of water features for the respondent employer, Hyatt Regency Scottsdale.  On December 11, 2007, the claimant tripped on a water hose and fell, striking his right knee.  He immediately sought medical treatment and filed a workers' compensation claim.  Broadspire accepted the claim for benefits.

¶4            Mitchell S. Wagner, M.D., treated the claimant and surgically repaired a right bicondylar tibial plateau fracture with placement of a steel plate and screws.  On September 9, 2008, Dr. Wagner reported:

> **HISTORY:** The patient is here for follow-up.  He is status post ORIF right bicondylar tibial plateau fracture in December 2007.  I saw him last in my office in follow-up on the 22nd of April.  At that time [he] was having some irritation around the hardware that was placed but was mild. I elected to proceed with conservative treatment.  The patient comes in today for routine follow-up.  I have not seen him since April.  He reports an occasional, mild pain over the lateral aspect of his right knee in the region where the hardware was placed.  The pain only occurs when he puts his knee in a certain position that results in the

---

[1]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

discomfort but then quickly resolves. It is not interfering with his activities of daily living or his ability to work, and he can walk long distances without a problem. The patient is having no locking, catching or other mechanical symptoms involving the right knee. No giving way episodes.

. . . .

**IMPRESSION:** Mild irritation from underlying hardware, status post ORIF, right tibial plateau fracture.

**PLAN:** At this point he is not finding the pain to be interfering with his daily activities or work. Will hold off on any surgical intervention at this point. I do think we can change him to a supportive care award status such that I can see him every six months, or sooner if a problem develops, to get x-rays and possible additional surgery or physical therapy depending on outcome in the future. Will request this for two years.

¶5        Based on Dr. Wagner's September 9, 2008 report, Broadspire issued two notices on September 16, 2008 - an NCS closing the claimant's claim and a Notice of Supportive Medical Maintenance Benefits. The NCS provided in part as follows:

☒ 7. Injury resulted in no permanent disability.

☒ 8. Injury resulted in permanent disability. (Amount of permanent benefits, if any, and supportive medical maintenance benefits, if any, will be authorized by subsequent notice.)

The Notice of Supportive Medical Maintenance Benefits provided:

SUPPORTIVE MEDICAL MAINTENANCE BENEFITS ARE AUTHORIZED BY THE ABOVE-NAMED INSURANCE CARRIER AS SET FORTH BELOW DURING THE PERIOD OF DISABILITY OR UNTIL FURTHER NOTICE.

Supportive care is awarded for three doctor visit[s] a year with x-rays, up to 12 physical therapy appointments.

This award will expire on September 9, 2010. It will be reviewed annually and terminated for lack of use.

IF CONDITION WORSENS REQUIRING ACTIVE MEDICAL CARE, A PETITION MUST BE FILED WITH THE INDUSTRIAL COMMISSION[.] A.R.S. [§] 23-1061(H)[.]

**¶6** The claimant returned to his regular work and continued to see Dr. Wagner. On May 19, 2009, Dr. Wagner noted that the hardware needed to be removed from the claimant's right knee, and he scheduled surgery for July 24, 2009. On July 6, 2009, Broadspire issued an NCS reopening the claimant's 2007 claim for additional benefits. The scheduled surgery was performed, and on August 11, 2009, Dr. Wagner released the claimant to return to his regular work. Broadspire sent the claimant two twenty-day letters[2] to ascertain whether he had continued to see Dr. Wagner after August 11, 2009, and then reclosed his claim without permanent impairment.

**¶7** Meanwhile, on July 19, 2009, before the scheduled second right knee surgery, the claimant fell at work and sustained a new injury, this time a fracture to his left knee. He filed a new workers' compensation claim, and the respondent carrier, Gallagher Bassett Services, Inc. ("Gallagher Bassett"), accepted the claim as a no time lost ("NTL") claim[3] and closed it with no permanent impairment. At the same time, the carrier issued a supportive care award relative to this injury. When the left knee fracture did not heal, the claimant filed a petition to reopen the 2009 claim for surgery to place a steel plate and screws.[4]

---

[2] *See generally Teller v. Indus. Comm'n*, 179 Ariz. 367, 373-74, 879 P.2d 375, 381-82 (App. 1994) (examining the validity of a claim's closure based on a fundamentally defective twenty-day letter).

[3] *See generally* A.R.S. § 23-1061(M) (providing that no compensation is payable unless the claimant loses more than seven days from work); *Arizona Workers' Compensation Handbook ("Handbook")* § 9.4.1.3, at 9-11 (Ray J. Davis et al. eds., 1992 & Supp. 2013).

[4] The claimant initially filed an A.R.S. § 23-1061(J) hearing request, but the carrier refused to authorize the left knee surgery under the December 9, 2009 supportive care award. Because surgery constituted

¶8        Gallagher Bassett accepted the petition for benefits, and the claimant underwent Dr. Wagner's recommended surgery. The 2009 claim was subsequently reclosed with a scheduled permanent impairment and supportive care benefits. The claimant timely requested a hearing and asserted the claim should have been closed with an unscheduled permanent impairment.

¶9        The claimant also filed a petition to reopen the 2007 claim, asserting the "[i]njury resulted in permanent impairment. Claim needs to be reopened for rating and closed pursuant to A.R.S. [§] 23-1044(B)(15)." Broadspire denied the petition, and the claimant timely requested a hearing. The ALJ consolidated the 2007 and 2009 claims for ICA hearings.

¶10       The ALJ held three hearings and heard testimony from the claimant, Dr. Wagner, and an independent medical examiner, Anthony Theiler, M.D. The ALJ then entered a consolidated award, in which he resolved the medical conflicts in favor of Dr. Theiler, and based on that determination, found the claimant had failed to establish that his 2007 claim should be reopened[5] or his 2009 claim should have been closed with an unscheduled permanent impairment. The claimant timely requested administrative review, but the ALJ summarily affirmed the Award. The claimant next brought this timely petition.

### III. ANALYSIS

¶11       The claimant first argues that Broadspire's September 16, 2008 NCS was ambiguous and not entitled to finality under *Bernard*. In *Bernard*, the claimant sustained an industrial injury and filed a workers' compensation claim. 24 Ariz. App. at 136, 536 P.2d at 705. The carrier issued a single NCS, which accepted the claim for benefits, terminated medical benefits, and discharged the claimant with no permanent

active medical care, a petition to reopen was required. *See* A.R.S. § 23-1061(H). Active care is medical treatment intended to improve rather than maintain a condition. *See generally Home Ins. Co. v. Indus. Comm'n*, 23 Ariz. App. 90, 95-96, 530 P.2d 1123, 1128-29 (1975).

5        In order to reopen a workers' compensation claim, a claimant must establish the existence of a new, additional, or previously undiscovered condition and a causal relationship between that condition and the prior industrial injury. *See* A.R.S. § 23-1061(H); *Pascucci v. Indus. Comm'n*, 126 Ariz. 442, 444, 616 P.2d 902, 904 (App. 1980).

impairment. *Id*. After receiving this notice, the claimant continued to receive medical and surgical treatment from the doctor provided by the insurance carrier to treat her industrial injury. *Id*. at 136-37, 536 P.2d at 705-06. After she returned to work, she began to receive medical bills for her treatment. *Id*. at 137, 536 P.2d at 706. She then filed a petition to reopen, which was denied. *Id*.

¶12     The claimant requested an ICA hearing on the validity of the NCS, which had both accepted and terminated her claim, and on the denial of her petition to reopen. *Id*. The ALJ found the NCS had become final, and the hearing request was untimely. *Id*. The claimant appealed, and on appeal, this court found the NCS ambiguous and set aside the ALJ's award:

> [W]hen any reasonable doubt exists as to the meaning to be attached to a given form attempting to alter, terminate, or otherwise affect the rights of a claimant for workmen's compensation in this state, the benefit of that doubt will be given the claimant and the ambiguities resolved against the carriers, employers, State Compensation Fund and The Industrial Commission of Arizona.

*Id*. at 139, 536 P.2d at 708.

¶13     Relying on *Bernard*, the claimant argues that Broadspire's September 16, 2008 NCS is ambiguous and he is entitled to have the ambiguity resolved in his favor. We agree. Because Broadspire's NCS closed the claimant's 2007 claim both with permanent impairment and without permanent impairment, we construe the ambiguity against Broadspire. Accordingly, the NCS closed the 2007 claim with a permanent impairment, and the notice became final. *See* A.R.S. § 23-947(A); *Church of Jesus Christ of Latter Day Saints v. Indus. Comm'n*, 150 Ariz. 495, 498, 724 P.2d 581, 584 (App. 1986) (recognizing that a hearing must be requested within ninety days after the NCS is issued or the NCS becomes final and res judicata). For that reason, Dr. Theiler's testimony that the 2007 injury did not result in a permanent impairment is foreclosed by the prior final finding that the injury did result in a permanent impairment. For that reason, the ALJ's award must be set aside.

¶14     The claimant next argues that, assuming the September 16, 2008 NCS closed the 2007 injury with a scheduled[6] permanent impairment, the 2009 injury should have been closed with an unscheduled permanent impairment. When a compensable industrial injury results in a permanent impairment, an award of permanent disability benefits is made depending on the character of the impairment as either "scheduled" or "unscheduled." Scheduled injuries are listed in A.R.S. § 23-1044(B), and are conclusively presumed to adversely affect a claimant's earning capacity. *Handbook* § 7.2.4.1, at 7-4. Unscheduled impairments are compensated only upon a showing of LEC, made through an LEC determination. *See Handbook* § 7.4, at 7-16 to -18.

¶15     Arizona courts have long recognized that when a claimant has multiple impairments, those impairments may result in a greater total disability than the sum of the individual disabilities. *See, e.g., Ossic v. Verde Cent. Mines*, 46 Ariz. 176, 188, 49 P.2d 396, 401 (1935); 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 90.00, at 90-1 (2013). In that regard, scheduled impairments to two separate body parts are converted into an unscheduled impairment for purposes of determining permanent disability benefits. *See Ronquillo v. Indus. Comm'n*, 107 Ariz. 542, 543, 490 P.2d 423, 424 (1971); A.R.S. § 23-1044(B)-(C). In this case, the claimant's 2007 scheduled impairment to his right knee in combination with the 2009 scheduled impairment to his left knee entitled him to receive an unscheduled permanent impairment, and should have triggered an LEC determination and award.

¶16     The claimant last argues that the ALJ erroneously denied his petition to reopen the 2007 claim so he could unschedule his 2009 claim. Based upon our resolution of the prior issues, it is not necessary to reach this issue; however, we note that we have previously held a claimant cannot reopen a claim solely to unschedule. *See, e.g., Gladys v. Indus. Comm'n*, 192 Ariz. 524, 527-28, 968 P.2d 597, 600-01 (App. 1998).

---

[6]     An impairment to a leg falls within the statutory schedule of injuries. *See* A.R.S. § 23-1044(B)(15), (21).

## IV. CONCLUSION

**¶17** For all of the foregoing reasons, the award is set aside, and the matter is remanded to the ICA for an administrative LEC determination and further proceedings as appropriate.



Ruth A. Willingham · Clerk of the Court
FILED: MJT