# Richmond

## BLUE DIAMOND COAL COMPANY v. HASSIE HEAD PANNELL, WIDOW, ETC.

November 27, 1961.

Record No. 5309.

Present, All the Justices.

*W. T. Bowen* (*Greear, Bowen, Mullins & Winston,* on brief), for the appellant.

*Jay G. Kauffman* (*Guy A. Kauffman,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

This appeal presents for review an award of the Industrial Commission against Blue Diamond Coal Company, hereinafter called Blue Diamond, wherein the Commission awarded the statutory benefits. The award carried into effect the majority opinion of the Commission—one commissioner dissenting.

The assignments of error present four questions, the first being: Was the claim filed within the statutory period? This is jurisdictional, the burden resting with the claimant to prove that the claim was timely filed. *Railway Express Agency* v. *Harrington,* 119 Ind. App. 593, 88 N. E. 2d 175, 915; *Winston* v. *City of Richmond,* 196 Va. 403, 83 S. E. 2d 728.

Prior to the 1960 amendment § 65-49, Code of Virginia, 1950 (Acts of Assembly, 1952, ch. 205, p. 231) provided:

"LIMITATION UPON CLAIM.—The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one year after the employee first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease, or a diagnosis of such disease is first communicated to him, which ever shall first occur; and, if death results from the occupational disease within said one year period, unless a claim therefor be filed with the Commission within one year after such death. The limitations imposed by this section as amended shall be applicable to occupational diseases contracted before and after June 28, 1952."

■ The record discloses that Hubert F. Pannell had been employed as a miner for approximately 25 years prior to his death on December 19, 1958. He last worked for Blue Diamond on July 13, 1951. On that date he voluntarily terminated his employment to accept employment with Head Coal Company where he worked on the coal tipple for six or eight months. He then became a partner in the business and worked on the tipple from January, 1952 to March, 1955, when he and his partner sold the mine. Pannell then obtained employment as a carpenter and followed that trade for a period of approximately eight months. Thereafter he became disabled for work in October, 1956.

On January 22, 1958, Pannell's counsel wrote Blue Diamond that they had been employed by claimant to prosecute his claim for Workmen's Compensation "which we allege to have arisen out of and in the course of his employment while in the employ of your company at Monarch. We wish, therefore, to give your company notice pursuant to Sections 65-82-83, Code of Virginia, 1950, of said injury. Mr. Pannell has just recently—within about three weeks—been advised that he in all probability has the typical coal miner's occupational disease known as pneumoconiosis. Mr. Pannell was last employed by Blue Diamond in July, 1951."

On December 18, 1958, Pannell filed his claim with the Industrial Commission wherein he alleged he had contracted occupational pneumoconiosis as a result of exposure to the hazards of the disease while employed by Blue Diamond which had caused him to become disabled for work.

As aforesaid, Pannell died on December 19, 1958, and a claim for death benefits was filed with the Commission by his widow on September 28, 1959.

Pannell began to show symptoms of a chest condition as early as October, 1956, and was not engaged in a gainful occupation after that date. He was treated for the chest condition by Dr. Thomas S. Ely, a general practitioner of Jonesville. Dr. Ely was not of the opinion that Pannell had pneumoconiosis and did not advise him that he was suffering from an occupational disease.

Blue Diamond relies on a report filed by Dr. Daniel Gabriel, dated May 10, 1960, wherein he stated:

"(I)n November or December, 1957, I voiced an opinion to Hubert Pannell, after giving him a percussary chest examination, that he *may* have pneumoconiosis and should therefore be x-rayed. I was *not* able to make a confirming diagnosis of pneumoconiosis without the benefit

of x-rays and strongly urged him to have them taken. * *" (Italics supplied)

Blue Diamond contends that this report was sufficient under the statute (§ 65-49) to inform claimant that he had "a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease [pneumoconiosis]."

The Commission held to the contrary. The word "may" employed in the report would indicate that claimant might or might not have had pneumoconiosis and was not sufficiently definite to apprise him that he had contracted the disease. The Commission found "that the oral opinion expressed by Dr. Gabriel to the decedent constituted the communication of a tentative diagnosis of occupational disease, which charged the claimant with the duty of obtaining x-rays, as directed, within a reasonable period of time in order that a definite diagnosis could be made."

In November, 1958, Pannell underwent chest surgery in Dayton, Ohio. The surgery was performed by Dr. Walter Meeker who advised Pannell by letter that he had "anthracosis", a form of pneumoconiosis. This was the first definite information received by Pannell that he was afflicted with the disease. Later, in November and December, 1959, Dr. Meeker's diagnosis of pneumoconiosis was confirmed by Doctors William F. Schmidt and E. C. Culbertson who examined the "slides" theretofore made and presented to them.

We agree with the Commission's finding that "Insofar as the record discloses no definite diagnosis of the workman's incapacitating lung condition was made until November, 1958, subsequent to chest surgery by Dr. Walter Meeker of Miami Valley Hospital, Dayton, Ohio." The filing of the claim for compensation on December 18, 1958, was clearly within the statutory period.

The next two questions will be treated together. They are:

Was Pannell's death causally related to his employment?, and

Was Pannell last injuriously exposed at the operations of Blue Diamond?

The commissioners are in accord that Pannell contracted coal miner's pneumoconiosis, an occupational disease, and that the same contributed to his demise.

It is not denied that decedent's occupational disease resulted from the inhalation of coal dust. Under the mandate of § 65-47 of the Act, recovery in the case is limited to the employer in whose employment the workman was last injuriously exposed to the hazards of the

disease which proximately caused the malady or augmented or aggravated the pre-existing disease.

The burden is on the claimant to establish by a preponderance of the evidence in whose employment he was last injuriously exposed. *Pocahontas Fuel Co. v. Godbey*, 192 Va. 845, 852, 853, 66 S. E. 2d 859, 864.

As heretofore stated, Pannell was employed for a number of years at a tipple owned and operated by Blue Diamond. During this time he was exposed to the hazards of coal dust. The record discloses that the coal dust conditions at this tipple were bad. Mrs. Pannell testified that her husband terminated his employment with Blue Diamond in January, 1951, and refused to return because "he had worked in that dust so long that he wanted to get out of it."

Blue Diamond contends that as Pannell worked with Head Coal Company, first as an employee and later as part owner, where he was exposed to the hazards of coal dust, under the statute the Commission should have found that he was last injuriously exposed to the hazards of the disease while working with Head Coal Company.

The record shows that during the time Pannell worked at Head Coal Company the mine was wet and the coal was wet. There is ample evidence in the record to show that Pannell was not exposed to the hazards of coal dust while working with Head Coal Company. Whether he was or was not is a factual matter which, under the evidence, has been determined by the Commission, and its finding of fact on the issue presented is binding on us. *Walsh Construction Co. v. London*, 195 Va. 810, 815, 80 S. E. 2d 524, 527; *Rogers v. Williams*, 196 Va. 39, 42, 82 S. E. 2d 601, 603.

█ The fourth and final question is: Was Blue Diamond liable for pneumoconiosis?

When Pannell was first incapacitated in October, 1956, by reason of pneumoconiosis, and when, in January, 1958, the notice pursuant to § 65-48, Code of 1950, was given Blue Diamond, § 65-44 of the Act provided for coverage of all occupational diseases.

Effective June 27, 1958, § 65-44 was amended to permit the employer to be bound only by the schedule of occupational diseases set forth in the amended § 65-43.1 of the Act. This section set up a schedule which did not include pneumoconiosis as an occupational disease, and Blue Diamond elected to be bound by the schedule. The contention now is that this case is controlled by the amended Act which does not include pneumoconiosis as an occupational disease. We agree with the Commission that there is no merit in this contention.

It is clear from the record that Pannell became incapacitated for work in October, 1956, and the Commission so found. The law in effect at the time of the incapacity governs the rights of the parties, and not the law effective at the time the award is made or on the date of the death of the employee. *Stanswsky* v. *Industrial Commission*, 344 Ill. 436, 176 N. E. 898.

Section 1-16, Code of Virginia, 1950, provides, *inter alia:*

"No new law shall be construed to repeal a former law, as to * * * any right accrued, or claim arising under the former law, or in any way whatever to affect any * * * right accrued, or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings; * * *."

This section saves from the operation of a repealing section substantive claims and rights. *Va. and W. Va. Coal Co.* v. *Charles* (Va.), 254 F. 379.

We agree with the Commission's conclusion that Pannell was incapacitated as of October 1, 1956, and that the right was substantive and could not be taken away by a subsequent Act of the legislature or by the subsequent election of Blue Diamond; that Pannell's claim for compensation was filed within the time provided by § 65-49, Code of 1950, and that the claim of the dependent widow was filed as required within one year from the date of his death.

The award of the Commission is        .

*Affirmed.*