511 A.2d 863

Theodore TRIESCHOCK, Jr., and Helen Mae Trieschock, His Wife, Appellants,

v.

OWENS CORNING FIBERGLAS COMPANY, INC., Louisiana Pacific Corp., Forty-Eight Insulations, Inc., Eagle-Picher Industries, Inc., Owens-Illinois, Inc., George V. Hamilton, Inc., Keene Building Products Corp., the Celotex Corp., Successor In Interest To Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company and Panacon Corp., Atlas Asbestos Co., Ltd., Pabco Insulation Division of Louisiana-Pacific Corp., Pittsburgh Corning Corp., Combustion Engineering, Inc., Armstrong World Industries, Inc., Johns-Manville Corp. and Garlock Gasket Corp.

v.

ANCHOR PACKING COMPANY, Argo Packing, Inc., John-Crane Houdaille, Inc., Flexitallic Gasket Co., Inc., GAF Corporation, Raymark Industries, Inc., Durabla Manufacturing Company, and Tannetics, Inc.

Superior Court of Pennsylvania.

Argued Feb. 19, 1986.

Filed June 24, 1986.

William R. Caroselli, Pittsburgh, for appellants.

Kathy K. Condo-Caritis, Pittsburgh, for Pittsburgh Corning, appellee.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

BROSKY, Judge:

This appeal is from summary judgment. In dispute here is the trial court's decision that the statute of limitations had run in this "creeping disease" case.[1] The disposition of this issue entails consideration of two questions novel in this jurisdiction. First, with what degree of certainty must a plaintiff be aware of a medical condition in order to start the statute of limitations period running? Second, does a tentative, preliminary diagnosis—insufficient to start the statute running—activate a duty to make, with due diligence, further enquiries into the cause of his condition? Our answers to these questions, as applied to the facts of this case, require the reversal of the summary judgment.

## Facts

Appellant,[2] Theodore Trieschock, Jr., was employed as a pipefitter and service operator from 1945 to 1982. During this period he was exposed to asbestos.

In March of 1982, after reviewing employee medical screening results, a physician paid by appellant's employer contacted appellant by telephone and told him that he suspected that appellant had asbestosis and that he was scheduled to visit a pulmonary specialist. Appellant went for that examination, and on April 8, 1982 was told by the specialist that he had asbestosis. The instant action was initiated on April 6, 1984.

A two-year statute of limitations applies, 42 Pa.C.S. § 5524. Thus, if that period started to run from the contact with the first physician in March of 1982, the action is not timely. If the statute of limitations period began only with the notification by the specialist, the case was clearly initiated in time.

As a general principle, the statute of limitations begins to run in a tort case when the cause of action accrues. When

1. This term refers to those medical conditions which develop slowly and progressively after exposure to the causal agent.

2. While we recognize that there are two appellants, husband and wife, the term appellant will refer to the husband.

the cause of action accrues is, of course, quite apparent when a collision forms the grounds for the suit. But when the injury is, as here, due to a "creeping disease," developing for years without symptoms after the exposure to the causative agents, that date is simply not ascertainable. Accordingly, this Court has fashioned a distinct rule for such cases: "We find that the statute of limitations begins to run in 'creeping disease' cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Cathcart v. Keene*, 324 Pa.Super. 123, 136, 471 A.2d 493, 500 (1984).

The question before us then is whether the fact that appellant was told that asbestosis was suspected would establish, as a matter of law, that appellant knew, or should have known, that he had asbestosis, an "injury." The case law in this Commonwealth has not treated a situation with these facts, but two other jurisdictions have done so. A case out of Arizona, *Mead v. American Smelting Refining Co.*, 1 Ariz.App. 73, 399 P.2d 694 (1965), concerned the timeliness of a Workmen's Compensation claim. The statute of limitations provision in force provided that "the time starts to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should have known that he had sustained a compensable injury...." *Id.* 399 P.2d at 697. This test is sufficiently similar to the *Cathcart* test to justify consideration of the legal effect of a preliminary diagnosis in that state.

In *Mead* the worker had been informed by physicians of certain breathing disorders, but those physicians did not consider them to be serious. Holding that such a situation did not activate the worker's duty to file a claim, the court wrote:

> In our opinion, the Arizona Workmen's Compensation Law does not place upon the employee the duty of knowing the nature of his disability and its relation to his

employment before these things are reasonably ascertainable by the medical profession.

*Mead,* supra, 399 P.2d at 698.

Thirteen years later Arizona's Supreme Court had this issue before it and approved of the intermediate appellate court's rule in *Mead.*

In the case before us, the facts upon which the hearing officer based his award indicate that the deceased developed a disability related to shortness of breath shortly prior to his death. His treating physicians were unable to diagnose his condition as asbestosis prior to exploratory surgery and biopsy of fibrous tissues; in fact, a tentative diagnosis of carcinoma had been made. A claimant under such conditions cannot be held to a higher standard of diligence than the physicians treating him in discovering the relationship of his condition to his employment.

*Nelson v. Industrial Commission of Arizona,* 120 Ariz. 278, 585 P.2d 887, 891 (App.1978).

Another case, this one from Virginia, is also of interest: *Blue Diamond Coal Co. v. Pannell,* 203 Va. 49, 122 S.E.2d 666 (1961). Like *Mead* and *Nelson, Blue Diamond* treated the timeliness of a Workmen's Compensation claim. The standard for activating the statute of limitations was:

The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one year after the employee first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease, or a diagnosis of such disease is first communicated to him, which ever shall first occur ..."

*Blue Diamond,* supra, 122 S.E.2d at 668.

While that standard is considerably more cumbersome than the briefer *Cathcart* test, *Blue Diamond* is still instructive.

The preliminary diagnosis in *Blue Diamond,* parallel to the "suspicion" in the case *sub judice,* was reported by the examining physician as follows:

[In] November or December, 1957, I voiced an opinion to Hubert Pannell, after giving him a percussary chest examination, that he may have pneumoconiosis and should therefore be x-rayed. I was not able to make a confirming diagnosis of pneumoconiosis without the benefit (52) of x-rays and strongly urged him to have them taken....

*Blue Diamond,* supra, 122 S.E.2d at 668. The high court of Virginia concluded that these facts did not constitute a sufficiently definite diagnosis to commence the running of the statute of limitations.

■ We find *Mead, Nelson* and *Blue Diamond* persuasive. A plaintiff in a creeping disease case should not be required to have greater knowledge than his physicians about his medical condition. If those physicians are not reasonably certain as to his diagnosis, then he certainly cannot be bound to have the knowledge necessary to start the statute of limitations running. The information conveyed to appellant in March was insufficiently certain to start the period.

■ Another matter remains to be resolved. While the tentative diagnosis of suspected asbestosis was not sufficient to start the running of the statute of limitations, we believe it should be considered to have activated a duty on appellant's part to determine, with due diligence, whether he did, in fact, have that disease.[3] The absence of such a duty would mean that a potential plaintiff with a tentative diagnosis could wait indefinitely before acting to confirm it. That would not be consonant with the purposes served by the statute of limitations.

In *Blue Diamond,* the Supreme Court of Virginia approved of such a duty in the face of a tentative diagnosis.

3. A parallel duty was imposed in *Cathcart* vis-a-vis the second part of the test: "the burden is on the injured party, once he discovers the cause of his injuries .. to determine ... the party or parties whose negligence or breach of duty was responsible for the event or the condition." *Cathcart,* supra, 324 Pa.Super. at 139, 471 A.2d 501.

The Commission found 'that the oral opinion expressed by Dr. Gabriel to the decedent constituted the communication of a tentative diagnosis of occupational disease, which charged the claimant with the duty of obtaining x-rays, as directed, within a reasonable period of time in order that a definite diagnosis could be made.'

*Blue Diamond*, supra, 122 S.E.2d at 669.

■ In the instant case, it is apparent that appellant did act with due diligence in following up on the suspicion of asbestosis diagnosis. He saw a specialist and was definitely diagnosed the month after the first tentative diagnosis. What is more, appellant did perfect his claim within the two-year statute of *limitations*.

Order reversed. The case is remanded for further proceedings. Jurisdiction relinquished.

POPOVICH, J., notes his dissent.