

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2006

# Vitale v. Buckingham

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Vitale v. Buckingham" (2006). *2006 Decisions*. Paper 924.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/924

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3434
_____

ANTHONY J. VITALE and THERESA VITALE,
<u>Appellants,</u>

vs.

BUCKINGHAM MANUFACTURING COMPANY, INC.

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(No. 03-cv-06845)
District Judge: Honorable Norma L. Shapiro

_____

Argued May 16, 2006

_____

Before: MCKEE and GARTH, <u>Circuit</u> <u>Judges</u>, and LIFLAND, <u>District</u> <u>Judge</u>[*]

(Opinion Filed: June 9, 2006)
_____

OPINION
_____

_____

[*] The Honorable John C. Lifland, Senior District Judge for the District of New
Jersey, sitting by designation.

Robert L. Sachs, Jr. (Argued)

Shrager, Spivey & Sachs
2001 Market Street, 32nd Floor
Philadelphia, PA 19103

Counsel for Appellant

Richard W. Yost (Argued)
Phillip J. Meyer
Yost & Tretta
Two Penn Center Plaza
1500 John F. Kennedy Blvd.
Suite 610
Philadelphia, PA 19102

Counsel for Appellee.


LIFLAND, District Judge:

Anthony and Theresa Vitale ("Plaintiffs") filed suit in the United States District Court for the Eastern District of Pennsylvania against Buckingham Manufacturing Company, Inc. ("Defendant") for injuries suffered by Mr. Vitale allegedly from his use of pole climbers manufactured by Defendant. The District Court entered summary judgment in favor of Defendant, holding that Pennsylvania's statute of limitations barred Plaintiffs' claims. We will reverse.


I.

Because we write solely for the benefit of the parties, we will only briefly recount the relevant facts herein. In October of 1999, Anthony Vitale enrolled in the "Line School" of Pennsylvania Energy Company ("PECO") to receive training in utility pole

climbing. Upon enrollment, he received a new pair of Defendant's pole climbers, leg irons which are strapped to the lineman's lower leg and calf to assist the lineman in climbing up and standing on the utility pole. Vitale wore the same pair of Defendant's pole climbers during training and during his job as a lineman through late November and early December of 2001.

After the first day of his training, Vitale felt soreness in his legs and then began experiencing a persistent, general pain in his knees and legs. In October of 1999, Vitale visited Dr. Robert Braunfield, his family physician, several times, complaining of knee discomfort. Dr. Braunfield diagnosed Vitale with bilateral medial[1] knee discomfort and concluded that the source of the pain was "probably occupational." (Appendix ("A") 185) Dr. Braunfield referred Vitale to Dr. E. James Kohl, who agreed with Dr. Braunfield that the source of Vitale's knee pain was occupational, noting that the problem was "associated with pole climbing as part of his training." (A190)

On November 15, 2001, Vitale returned to Dr. Braunfield, who noted that Vitale complained of a "1 year history of vague discomfort right lateral[2] leg radiating down to the ankle, pain has been quite severe." (A193) He further noted that Vitale had suffered "probable irritation and/or contusion to the peroneal nerve."[3] (A193) Sometime after this

---

[1] On the inside of the knee.

[2] On the outside of the knee.

[3] A nerve which traverses the outside of the knee and affects the lower leg down to and including the ankle.

3

visit on November 15, 2001, Dr. Braunfield filled out his portion of the Notice of Disability form for PECO which stated that the injury was "work related." (A268) It is clear that someone from PECO initiated and signed the form on December 3, 2001. (Id.) It is not clear, however, when Dr. Braunfield filled out his portion of the form. (Id.)

On November 26, 2001, Vitale stopped working because of discomfort in his lower right leg. On November 27, 2001, Dr. Kiel, a neurologist recommended by Dr. Braunfield, called Dr. Braunfield to report an abnormal EMG[4] finding in Vitale's right peroneal nerve and informed him that Vitale had an "abnormality in his right peroneal nerve with associated foot drop." (A193) Dr. Braunfield noted that the "etiology is to be determined, might be traumatic in origin." (Id.) On November 30, 2001, Dr. Kiel wrote to Dr. Braunfield that an EMG showed that Vitale had "acute denervation in the right peroneal nerve" and that "the problem is around the fibular head and I think crossing his legs is the most likely etiology." (A213)

Vitale's pain was not attributed to the Defendant's pole climbers until December 13, 2001, when Dr. James A. Kenning examined Vitale and wrote to Dr. Braunfield that Vitale had "approximately two years' duration bilateral knee pain related to his participation in what he described as climbing school during the course of his professional training...approximately 1 month ago, he began experiencing episodic stabbing pain in the lateral aspect of his right calf....I believe the patient's symptoms are

---

[4] Electromyography

4

most certainly related to use of a support apparatus, which straps around his lower leg and extends to his foot, which is used to support his ankle in climbing...I think that in the absence of any other etiology, this almost certainly is the cause for the patient's symptoms....I think it is clear that the patient has a mild right common peroneal nerve palsy related to the apparatus used to support his foot with repetitive pole climbing." (A235-36)

On November 19, 2003, Plaintiffs filed their complaint in the Court of Common Pleas of Philadelphia, alleging two counts of strict liability, one count of negligence, and one count of loss of consortium. Defendant removed. The District Court entered summary judgment in favor of Defendant, finding that the latest possible accrual date for Plaintiffs' cause of action was November 15, 2001, and therefore that Pennsylvania's two-year statute of limitations had expired by November 19, 2003, when Plaintiffs filed their claim. This timely appeal followed.

### III.

The District Court had subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332(a)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the grant of a motion for summary judgment. Nationwide Mut. Ins. Co. v. Riley, 352 F.3d 804, 806 n.3 (3d Cir. 2003) (citing Omnipotent Communications Enters, L.P. v. Newton Township, 219 F.3d 240, 242 (3d Cir. 2000)). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.

5

Civ. P. 56(c). "We review the facts in a light most favorable to the party against whom summary judgment was entered." Coolspring v. Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993).

## IV.

Pennsylvania's two-year statute of limitations for an injury caused by the wrongful act or negligence of another generally begins to run as soon as the injury is inflicted. 42 Pa. Cons. Stat. §§ 5502(a), 5524(2); Haines v. Jones, 830 A.2d 579, 585 (Pa. Super 2003). The "discovery rule" is an exception to this general accrual date and provides that the statute of limitations is tolled until the injured party knows or reasonably should know "(1) that he has been injured, and (2) that his injury has been caused by another's conduct." Haines, 830 A.2d at 585.

The District Court found that even if the discovery rule applied, the accrual date was no later than November 15, 2001, when Dr. Braunfield diagnosed Vitale as suffering from a peroneal nerve injury and then reported on Vitale's medical certification form for PECO that the injury was "work related." From this, the District Court concluded that no reasonable juror could find that Vitale did not know or should not have known, as of November 15, 2001, that he had been injured by Defendant's pole climbing apparatus. We disagree with the District Court's analysis for several reasons.

First, it is not clear when Dr. Braunfield filled out the medical certification form for PECO. Therefore, the District Court was incorrect to conclude that Dr. Braunfield filled it out on the same day that he examined Vitale, and that Vitale knew as of

6

November 15, 2001 that his injury was "work related."  Second, even if Vitale had known on November 15, 2001 that his injury was "work related," a reasonable juror could still find that he did not know and should not have known, on November 15, 2001, that his injury was caused by the Defendant's pole climbers.  The District Court erroneously regarded "work related" as necessarily related to Defendant's pole-climbers.  However, an etiological diagnosis of "work related" is much broader than a diagnosis that one has been injured by a specific product used at work.

Under the discovery rule, the limitations period is tolled until the injured party knows or reasonably should know "(1) that he has been injured, and (2) that his injury has been caused by another's conduct."  Id. at 585.   The inquiry under the discovery rule focuses not on the plaintiff's actual knowledge, but on "whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff."  O'Brien v. Eli Lilly & Co., 668 F.2d 704, 711 (3d Cir. 1981).  Applying this standard, the Court finds that the District Court erred in determining, as a matter of law, that November 15, 2001 was the latest possible accrual date.  A reasonable juror could find that the accrual date was November 27, 2001 (when Vitale's injury was first diagnosed) or December 13, 2001 (when the cause of Vitale's injury was first attributed to Defendant's pole climbers).  That Vitale could not reasonably be expected to have known on November 15, 2001 that his injury was caused by another's conduct is underscored by Dr. Kiel's diagnosis, on November 30, 2001, that the cause of Vitale's injury was crossing his legs.  See Bohus v. Beloff, 950 F.2d 919, 929 (3d Cir. 1991) ("[L]ay persons should not be charged with

7

greater knowledge of their physical condition than that possessed by the physicians on whose advice the must rely.") (citing <u>Trieschock v. Owens Corning Fiberglas Co.</u>, 354 Pa. Super. 263, 267, 511 A.3d 863, 865 (Pa. Super. 1986)).  Accordingly, we find that the District Court erred in holding that as a matter of law that November 15, 2001 was the latest possible accrual date.  It is for a jury on remand to resolve the dispute of the parties concerning the accrual date of Vitale's action.

IV.

For the foregoing reasons, we will reverse the order of the District Court granting Defendant's motion for summary judgment, and remand to the District Court for further proceedings.